UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **BRADLEY J STONE** | **CASE NO.  2:20-CV-00632** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **KAEFER L L C** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM ORDER

Before the Court is a "Motion to Enforce Settlement and Award Attorneys' Fees" (Doc. 25) wherein defendant Kaefer, LLC ("Kaefer") seeks an order from the Court to enforce a settlement it contends it reached with Plaintiff Bradley J. Stone. Should the Court grant the motion, Kaefer specifically requests that the Court enter an Order (1) requiring Mr. Stone to execute and provide documents necessary to formalize the parties' settlement, (2) dismiss the case with prejudice, and (3) award Kaefer its reasonable attorneys' fees in connection with this motion.

After this lawsuit was filed, the parties sought several extensions and began negotiations to settle the suit.  At some point offers and counteroffers were made through each of the parties' counsel.  On November 3, 2020, after reaching an agreement as to an agreeable sum certain to settle the lawsuit, Plaintiff through his counsel emailed counsel for Kaefer that he could confirm that the parties had a deal and requested that Kaefer send him a release. At the time Mr. Stone was in Cambodia and unable to travel due to the COVID-19 pandemic.  Most if not all of the communications between Mr. Stone and his counsel were made through email.

The first draft of the settlement was sent to Plaintiff's counsel on November 9, 2020; Kaefer followed up with Mr. Stone's counsel as to whether he had any revisions to the draft settlement. Mr. Stone's counsel responded that he was waiting "on one last cost item to iron out" in order to get "exact numbers," and, "[i]n the meantime," provided his "very minor" edits to the settlement agreement.[1]

On November 23, 2020, Kaefer's counsel emailed Mr. Stone's counsel with a draft of the settlement that incorporated both the payment breakdown as well as Mr. Stone's counsel's suggested edits, further requesting Mr. Stone's physical address, the parties' signature and explaining that a W-9 for Mr. Stone was also outstanding. On November 25, 2020, Mr. Stone's counsel, through email, informed Kaefer that his client was "now potentially retracting on the deal and refusing to sign."[2]

Kaefer argues that Mr. Stone's refusal to sign the settlement agreement was without justification. Having been apprised of the instant Motion to Enforce Settlement, Mr. Stone directly contacted the Court through email informing same that he did not agree to the terms of the settlement agreement; he further requested that the matter proceed to trial. The Court scheduled and held a telephone conference with counsel for the parties to discuss the motion. The Court then ordered the parties to file memoranda to address Kaefer's position that it could rely on Mr. Stone's counsel's apparent authority as a basis for enforcing the settlement between the parties.

---

[1] Defendant's exhibit 7.
[2] Defendant's exhibit 10.

In their brief to the Court, Kaefer inserts an email communication from Mr. Stone's counsel to Kaefer expressly stating that he had the authority to drop the demand made and that his "client is further willing to agree to a confidentiality agreement and non-disparagement agreement as well."[3]

Kaefer also provides in its brief an email dated September 9, 2020, which indicates that an offer was made to Mr. Stone for "a full and final settlement of all claims against Kaefer and dismissal of this litigation."[4] Kaefer argues that it could rely on Mr. Stone's counsel's apparent authority to bind Mr. Stone to the terms of the Settlement Agreement.

"[A]pparent authority provides a mechanism for a third party to bind a principal based on the actions of her agent, even if the principal herself did not provide the agent with authority." *Porter v. Am. Sec. Ins. Co.,* 2020 U.S. Dist. LEXIS 95548, at \*8 (E.D. La. Feb. 10, 2020). Under this theory, "[t]he principal will be bound . . . if he has put his agent in such a position or has acted in such a manner as to give an innocent third person the reasonable belief that the agent has authority to act for the principal." *Id. at \*8-9* (quoting *AAA Tire & Exp., Inc., v Big Chief Truck Lines, Inc.,* 385 So.2d 426, 429 (La.App. 1 Cir. 1980).

Be that as it may, the Louisiana Supreme Court has stated that, "until the parties signed a document or documents evincing their consent to the terms of their earlier oral agreement, either party was free to change his or her mind." *Sullivan v. Sullivan*, 671 So.2d 315, 318 (La. 4/8/96). Louisiana law provides that a settlement, or "compromise"

---

[3] Defendant's Supplement Brief in Support of Motion to Enforce Settlement" p.2 (Doc. 37).
[4] Id. p. 3.

agreement, "is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." Louisiana Civil Code article 3071. "There are two essential elements of a compromise: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." *Preston Law Firm, LLC v. Mariner Health Care Mgmt. Co.,* 622 F.3d 384, 390 (5th Cir. 2010) (quoting *Klebanoff v. Haberle*, 978 So.2d 598, 602 (La.App. 2 Cir. 2008)). Louisiana Civil Code article 3072 provides that the agreement must "be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings." *Sullivan,* 671 So.2d at 317.

The purpose of article 3071's requirement that the compromise be in writing is "to avoid swapping a new dispute for an old—to avoid the necessity of credibility evaluations. Specifically, the writing requirement aims at avoiding litigation over what the terms of a settlement are." *Townsend v. Square,* 643 So.2d 787, 790 (La.App. 4 Cir. 9/29/94) (citing *Scott v. Green,* 621 So.2d 1 (La.App. 4 Cir. 2/26/93).

After receiving the Settlement Agreement and reviewing its terms, Mr. Stone rejected the Agreement due to certain conditions, specifically, that he could not pursue a lawsuit against Kaefer in Australia and a non-disparagement provision.[5] Consequently, Mr. Stone did not sign the agreement. Obviously, the purpose of drafting an agreement and allowing the parties to the agreement to review its terms and conditions is to make certain

---

[5] Plaintiff's initial agreement to the non-disparagement provision was made many months earlier, and at a much higher settlement price.

that there is a meeting of the minds as to the entire agreement.  There was no meeting of the minds as to this Settlement agreement.

Although "attorneys are presumed to have the authority to negotiate a settlement proposal for their clients," "they may not enter a binding agreement without the client's clear and express consent." *F&S Equip. Co. v. Int'l Matex Tank Terminals,* 469 So.2d 256, 257 (La. Ct. App. 1985) *writ denied sub nom., F&S Equip. Co. v. Int'l-Matex Tank Terminals,* 475 So.2d 358 (La. 1985).

## **CONCLUSION**

The Court finds that because there was no meeting of the minds as to all of the terms of the Settlement Agreement. Because Mr. Stone rejected the terms of the agreement and he refused to sign it, the Court will not enforce the Settlement Agreement. Accordingly,

**IT IS ORDERED** that the Motion to Enforce Settlement Agreement is hereby **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 9th day of February, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**